UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** <br><br> **Plaintiff,** <br><br> v. <br><br> **James R. Craigie,** <br><br> **Defendant.** | **COMPLAINT** <br><br> Civil Action No. |

Plaintiff Securities and Exchange Commission ("SEC"), for its Complaint against Defendant James R. Craigie alleges as follows:

## SUMMARY

1. This case arises from Defendant James Craigie's failure to disclose information to Church & Dwight Co., Inc.'s ("Church & Dwight" or the "Company") Board of Directors that was relevant to the Board determining whether Craigie met the criteria to be an independent director in 2021 and 2022.

2. James Craigie was appointed as Church & Dwight's CEO in 2004 and held that role for over eleven years. He served on Church & Dwight's Board of Directors as its Non-Executive Chairman from 2007 to 2019 and as a non-independent director from 2004 to 2019. He became an independent director in 2019.

3. To become an independent director, the Board needed to affirmatively determine that Craigie did not have a material relationship with Church & Dwight by considering all relevant facts and circumstances. The Board relied substantially on Craigie to disclose any information that could affect this determination. After considering information provided by Craigie, the Board determined that Craigie was independent as of January 2019

1

and January 2020, and the shareholders elected Craigie as an independent director effective at the 2020 annual shareholder meeting.

4. From January 1, 2020 through March 17, 2023 (the "Relevant Period"), Craigie failed to disclose that he maintained a close personal friendship with a Church & Dwight executive ("Executive"). Craigie and Executive, along with their spouses, had been friends since at least 2017. Craigie, his spouse, other friends, and Executive and Executive's spouse regularly vacationed together both domestically and internationally from 2020 through 2023, and Craigie usually paid for airfare and lodging for Executive and his wife, as well as for other participants on the trips. All told, Craigie paid more than $100,000 for Executive and his spouse to travel on these vacations. Notably, Craigie did not similarly vacation with, nor pay expenses for, other executives at Church & Dwight.

5. Craigie did not disclose his relationship with Executive to Church & Dwight through the director independence process or otherwise. Moreover, Craigie asked Executive not to tell anyone at the Company about the nature of their relationship because Craigie wanted to avoid any appearance of bias towards Executive. Craigie, who had decades of experience as a public company executive and board member, knew, or should have known, that his relationship with Executive was relevant and significant to Church & Dwight's independence determination.

6. In early 2022, Church & Dwight's CEO informed the Board of Directors that he was considering retiring no earlier than the end of 2023. The Board of Directors then began evaluating internal candidates, including Executive to replace its current CEO after he retired. Craigie participated in the CEO succession process that included Executive despite his undisclosed close personal relationship with Executive.

7. At a Board meeting in August 2022, Craigie, among other Board members, voiced concern about the internal candidates, including Executive.

8. Around this time, Craigie disclosed the CEO succession process to Executive. Craigie believes that he made this disclosure to persuade Executive not to resign from the Company after Executive confided to Craigie that he was thinking of resigning. However, Board members had been instructed to keep the search confidential and Craigie did not disclose to the Board that he told Executive about the succession process.

9. The Board of Directors ultimately decided to retain an outside search firm to conduct a benchmarking exercise. Once retained, the outside search firm asked Board members to suggest any external CEO candidates. Craigie suggested a qualified external CEO candidate for Church & Dwight to consider. The candidate was a former colleague of Executive's from a different company. Craigie did not disclose to the Board that this candidate was a former colleague of Executive or that he had attended an international birthday vacation celebration for Executive with this candidate and other friends of Executive. Craigie and Executive separately discussed that if this candidate was hired, it could provide a viable path for Executive to succeed them.

10. In early 2023, Church & Dwight learned of Craigie's relationship with Executive. Church & Dwight's Board determined that by not disclosing this relationship, Craigie had violated his obligations of candor and confidentiality under the Company's Code of Conduct. The Board also determined that Craigie was no longer considered an independent director.

11. In its 2021 and 2022 proxy statements, Church & Dwight represented Craigie as an independent director because it was unaware of his relationship with Executive, due to Craigie's failure to disclose his relationship with Executive. As a result, Church & Dwight's

3

proxy statements in 2021 and 2022 contained misstatements of material fact when they listed Craigie as an independent director.

12.     Craigie is directly liable for these misstatements because he permitted his name to be used in the proxy statements and there is a substantial connection between the use of his name and the solicitation effort. Craigie controlled the content of Church & Dwight's 2021 and 2022 proxy statements, with respect to his independence, by failing to disclose to the Company his relationship with Executive, and because being elected as an independent director, as opposed to non-independent, allowed Craigie to participate in the CEO succession process without disclosing his relationship with Executive, even though Executive was a CEO candidate.

## VIOLATIONS

13.     By his actions, Craigie violated the proxy disclosure provisions of the federal securities laws. Specifically, Craigie violated Exchange Act Section 14(a) [15 U.S.C.§ 78n(a)] and Exchange Act Rule 14a-9 [17 C.F.R. §240.14a-9].

14.     The Commission requests, among other things, that the Court: (1) permanently restrain and enjoin Craigie from further violating the federal securities laws alleged in this Complaint; (2) order Craigie to pay civil monetary penalties; and (3) prohibit Craigie from acting as an officer or director of a publicly traded company.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action, and venue lies in this District, pursuant to Exchange Act Sections 21(d) and 27 [15 U.S.C. §§ 78u(d) and 78aa]. Craigie, directly or indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged in this Complaint. Craigie maintains a residence in New York City, New York and Church & Dwight's stock is registered on the New York Stock Exchange. Certain of the transactions, acts,

practices, and courses of business occurred largely within the Southern District of New York where Craigie maintained a residence and did business during the events alleged in this Complaint.

## DEFENDANT

16. **James R. Craigie,** age 70, resides in Miami Beach, Florida and New York City, New York. James Craigie served as Church & Dwight's CEO from July 2004 through the end of 2015. He also served as Church & Dwight's Non-Executive Chairman of the Board of Directors from July 2007 through May 2019, as a non-independent board member from 2004 through 2019, and as an independent board member from 2019 through May 2023. Craigie served as a board member of several other publicly traded companies during his career.

## RELATED ENTITY

17. **Church & Dwight Co., Inc**. is a Delaware corporation with its principal place of business in Ewing, New Jersey. It is a manufacturer of consumer-packaged goods. Church & Dwight's stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and trades on the New York Stock Exchange under the ticker symbol "CHD."

## FACTS

### *Craigie and Executive Maintained a Close Personal Friendship*

18. Craigie served as Church & Dwight's CEO for over eleven years, during which time the Company's market capital increased by six times. He also served as the Church & Dwight Board of Directors' Non-Executive Chairman for nearly twelve years. Craigie additionally served as a director of several other publicly traded companies, during his time as CEO and afterwards.

19. Around 2017, Craigie began to mentor Executive consistent with his practice of mentoring employees with growth potential. Shortly thereafter, Craigie formed a personal

5

friendship with Executive, who, at this time, was head of a Church & Dwight division. Over the next few years, Craigie and his spouse vacationed internationally with Executive and his spouse six times, traveling to eight countries on five continents. Craigie invited several other couples on these trips and generally paid for all guests' business class airfare and luxury lodging. Craigie paid over $100,000 for Executive and his spouse to attend these vacations.

20. Craigie and Executive, along with their spouses, also vacationed together domestically over long weekends, and Executive occasionally stayed at Craigie's apartment in Miami. Craigie took Executive and his family on boat trips in New York, Connecticut, and Miami.

21. Craigie did not take similar trips with or pay for travel for any other Church & Dwight personnel.

### *Craigie Hid His Relationship with Executive from Church & Dwight*

22. At the time Craigie began his friendship with Executive in 2017, he was an experienced public company executive and board member. He knew, or should have known, the criteria that public company boards use to assess a director's independence, as well as the factors that are important to that analysis. This included personal relationships with company executives.

23. Despite this knowledge and experience, Craigie withheld, and instructed Executive to withhold, the nature of their relationship from Church & Dwight. He did this several times during their relationship, beginning immediately before their first international trip in January 2020, when Craigie asked Executive not to mention their upcoming vacation to anyone at Church & Dwight, and continuing until shortly before the Company learned of their relationship in early 2023.

24. For example, in January 2021, Executive received a promotion, and was given an opportunity to make a presentation to Church & Dwight's Board to introduce himself. Craigie

offered to help Executive prepare his Board presentation but also told Executive "do not mention me at all as it would make me appear biased toward you as the next CEO."

25. In July 2021, Craigie told another Church & Dwight board member that he would be "at a friend's birthday bash" in a foreign country but he did not identify the "friend" as Executive, even though the other board member knew Executive.

26. In January 2023, Craigie and Executive were on an international vacation together shortly before a Church & Dwight Board meeting. Craigie asked Executive where he was telling other Church & Dwight executives he was travelling so that Craigie would not reveal that he was in the same place. When Executive told Craigie that he had told Company executives he was travelling to a different location than where they were going, Craigie approved of Executive's deception.

### *Church & Dwight Affirmatively Determined that Craigie was Independent without Knowledge of His Relationship with Executive*

27. The New York Stock Exchange requires listed companies to affirmatively determine whether a director is independent. Church & Dwight complies with these requirements through its Corporate Governance Guidelines, which state:

> No director will be considered "independent" unless the Board of Directors affirmatively determines that the director has no material relationship with the Company (either directly or as partner, stockholder, or officer of an organization that has a relationship with the Company). When making "independence" determinations, the Board shall broadly consider all relevant facts and circumstances as well as any other facts and considerations specified by the NYSE and specified by the rules and regulations of SEC.

28. Church & Dwight sends its board members questionnaires each year to gather information relevant to its independence determination. This is known as a "D&O Questionnaire." The D&O Questionnaire is the primary and often only source of information reviewed by the General Counsel, Governance Committee, and Board to assess and determine

the independence of a director. Church & Dwight depends on individual board members to be honest, truthful, and forthright in their disclosures on the D&O Questionnaire.

29. Information provided by directors in the D&O Questionnaire is used by the Board to determine independence, and that information is then incorporated into Church & Dwight's annual proxy statement.

30. After retiring as CEO in 2015, Craigie completed D&O Questionnaires for Church & Dwight each year but was considered a "non-independent" director because his recent tenure as CEO created a connection between himself and the Company. To become an independent director, the Board needed to affirmatively determine that Craigie did not have a material relationship with Church & Dwight by considering all relevant facts and circumstances. The Board relied substantially on Craigie to disclose any information that could affect this determination. Following a cooling-off period and after considering information provided by Craigie on the D&O Questionnaire, the Board determined that Craigie was independent as of January 2019 and January 2020, and shareholders elected Craigie as an independent director as of Church & Dwight's 2020 annual shareholder meeting.

31. In the following three years, 2021, 2022, and 2023, the D&O Questionnaires instructed recipients to "exercise great care" in completing the questionnaires and warned that directors can be subject to personal liability if the proxy statement misstates or omits a material fact.

32. These D&O Questionnaires state that for a director to be independent, the Board must affirmatively determine that the director has no material relationship with the Company. The Questionnaires provided examples of "material relationships," such as commercial,

industrial, banking, consulting, charitable, and familial relationships, and although the Questionnaires did not list friendships, they made clear the list of examples was not exhaustive.

33. After listing these examples of material relationships, the D&O Questionnaires asked if directors have "any other relationship" with Church & Dwight or its management. In 2021, 2022, and 2023, Craigie answered "no."

34. Church & Dwight's Board affirmatively determined that Craigie met the criteria for independence based on his answers to the D&O Questionnaire in 2021 and 2022.

35. Church & Dwight's 2021 and 2022 proxy statements represented that Craigie was an independent director and that he met the independence requirements.

36. Craigie was given an opportunity to review and comment on the 2021 and 2022 proxy statements before they were published to correct any misstatements or omissions. Craigie did not provide Church & Dwight with any comments or edits when he reviewed these proxy statements, nor did he reveal his relationship with Executive.

37. Church & Dwight discovered Craigie's relationship with Executive before publishing its 2023 Proxy Statement, and Craigie's "no" response was not incorporated into the 2023 proxy statement.

### *Craigie Knew or Should Have Known That His Friendship With Executive Was Relevant to His Director Independence*

38. Due to Craigie's decades of experience serving as a public company CEO and board member, Craigie understood the importance of the D&O Questionnaire for determining director independence at Church & Dwight, and for public companies generally. He also understood that information provided in the D&O Questionnaire is ultimately incorporated into the proxy statement.

39. During the Relevant Period, Craigie was an independent board member at two other public companies and he completed D&O Questionnaires for these companies as well.

40. These questionnaires contained similar questions to the Church & Dwight questionnaire.

41. Craigie knew, or should have known, that the standard for independence is the same for all public companies listed on the New York Stock Exchange. The NASDAQ contains similar independence standards. The questions in the D&O Questionnaires from other companies further clarified what facts and circumstances Craigie should have considered when responding to the Church & Dwight questionnaire.

42. In other D&O Questionnaires, Craigie was often more descriptive than in the Church & Dwight questionnaire and disclosed information that was informative, but not necessarily responsive, to the question. For example, on a D&O Questionnaire for Company A, Craigie disclosed that Company B donated to a charity that he is involved with even though the question only asked about donations made by Company A.

### *Church & Dwight's CEO Search*

43. In early 2022, Church & Dwight's CEO informed the Board that he was considering retirement no earlier than the end of 2023. The Board established a CEO succession committee ("CEO Committee") to assess the viability of internal candidates, including Executive.

44. The CEO Committee was comprised exclusively of a subset of independent directors but did not include Craigie. All directors, including Craigie and Church & Dwight's CEO (the sole non-independent director on the Board), were encouraged to participate in the process and were instructed to keep the process confidential.

45. Craigie had previously communicated to Executive on several occasions that he believed Executive had the potential, with further seasoning and experience, to be a future CEO of Church & Dwight and that he wanted to help Executive become the CEO.

46. Although Craigie believed Executive had legitimate CEO potential, at a Board meeting in August 2022, Craigie, among other Board members, voiced concern about the internal candidates, including Executive.

47. The Board ultimately decided to retain an outside search firm to conduct a benchmarking exercise. Once retained in December 2022, the outside search firm asked Board members to suggest any external CEO candidates.

48. Craigie informed Executive of the confidential external search process around this time. Craigie believes that he disclosed the search to Executive in an effort to persuade Executive not to resign from Church & Dwight. However, Board members had been instructed to keep the search confidential and Craigie did not disclose to the Board that he told Executive about the succession process.

49. While on an international vacation together, Craigie and Executive reached out to Executive's close friend and former supervisor ("the Friend") to solicit the Friend's interest in becoming a CEO candidate. The Friend had previously met Craigie when they both attended an international trip with Executive and Executive's other friends to celebrate Executive's milestone birthday.

50. Craigie sent the Friend's resume to the director leading the CEO Committee and indicated that he believed the Friend could be a good short-term option while the internal candidates gained more experience and seasoning. Craigie did not disclose (a) that the Friend

11

was Executive's former supervisor; (b) that he had met Friend while attending Executive's birthday vacation; or (c) his friendship with Executive.

51. Craigie privately expressed to Executive that if the Friend were hired, the other internal candidate may leave Church & Dwight. This would provide an opportunity for Executive eventually to succeed the Friend as CEO.

52. The Friend ultimately became a strong candidate for the CEO role before the Board became aware of Craigie and Executive's friendship.

### *Church & Dwight Becomes Aware of Craigie and Executive's Friendship; Halts CEO Search Process and Forms a Special Committee to Evaluate*

53. In February 2023, Church & Dwight became aware of Craigie's relationship with Executive. The Board then formed a Special Committee to gather additional facts necessary to assess Craigie's conduct. Church & Dwight's CEO postponed his retirement indefinitely and Church & Dwight halted the CEO succession process to allow the Board to reconsider how to structure the process in a way to eliminate bias.

54. The Special Committee found that Craigie failed to disclose his close personal friendship with Executive and disclosed confidential information about the CEO search, which he may have done to influence the CEO search to Executive's long-term advantage. As a result of this conduct, the Board determined that Craigie violated his obligations of confidentiality and candor under Church & Dwight's Code of Conduct.

55. The Board determined that Craigie was no longer considered an independent director. Church & Dwight made this disclosure in its 2023 proxy statement.

### *Craigie Sends Handwritten Note to Executive During Investigation*

56. In March 2023, the SEC was investigating Craigie's relationship with Executive, and Craigie was aware of the investigation. Despite a document retention notice from Church &

Dwight and an instruction not to communicate with other parties, including Executive, Craigie sent a letter to Executive discussing matters relevant to the SEC's investigation. Craigie's letter indicated that Executive should discard the letter after reading it.

*As a Result of Mr. Craigie's Conduct, Church & Dwight's*
*2021 and 2022 Proxy Statements were Materially Misleading*

57. Section 14(a) of the Exchange Act prohibits any person from acting in contravention of the Commission's rules and regulations "to solicit or to permit the use of his name to solicit any proxy . . . in respect of any security . . . registered pursuant to Section 12" of the Exchange Act. Rule 14a-9 thereunder prohibits the use of proxy statements containing materially false or misleading statements or materially misleading omissions.

58. Church & Dwight files an annual Schedule 14A proxy statement in accordance with Regulation 14A [17 C.F.R. § 240] and Regulation S-K [17 C.F.R. § 229]. Item 407 of Regulation S-K requires Church & Dwight to identify each director that is independent under the applicable independence standards.

59. Church & Dwight's 2021 and 2022 proxy statements represented that Craigie was an independent director. The proxy statements also represented that Church & Dwight had affirmatively determined that Craigie met the requirements to be an independent director within the meaning of the New York Stock Exchange listing standards and under the Church & Dwight's Corporate Governance Guidelines.

60. At the time it filed its 2021 and 2022 proxy statements, Church & Dwight was unaware of Craigie's relationship with Executive due to Craigie's concealment of the relationship. As a result of Craigie's concealment, Church & Dwight's proxy statements in 2021 and 2022 contained misstatements of material fact when they represented that Craigie was an independent director.

61. Whether a director is "independent" is material to shareholders because shareholders expect independent directors to exercise autonomous judgment in their decision making that is free from any conflicts of interest.

62. Craigie is directly liable for these misstatements because he failed to disclose his relationship to Executive in the D&O Questionnaires, which resulted in the material misstatements in the 2021 and 2022 proxy statements regarding independence. Craigie then permitted his name to be used in the proxy statements in connection with Church & Dwight's annual proxy solicitations. Craigie, as a Church & Dwight director nominee in 2021 and 2022, violated Section 14(a) of the Exchange Act and Rule 14a-9 thereunder, by failing to disclose information relevant to the independence determination and then permitting his name to be used in connection with Church & Dwight's proxy solicitation.

63. There was substantial connection between Craigie and the proxy solicitation effort because Craigie controlled the content of Church & Dwight's 2021 and 2022 proxy statements related to his independence. He failed to disclose his relationship with Executive in the D&O Questionnaire, which affected the content of the proxy statement related to his independence. In addition, the misleading proxy statement disclosure benefited Craigie because being re-elected as an independent director allowed Craigie to participate substantively in the CEO succession process, without disclosing his relationship with Executive even though Executive was a CEO candidate.

## COUNT I

**Violation of Section 14(a) and Rule 14a-9 of the Exchange Act [15 U.S.C. § 78n(a)]**

64. The SEC re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 63 above.

65. By engaging in the conduct described above, Craigie directly or indirectly, by use of mails, or the means or instrumentalities of interstate commerce or any facility of a national securities exchange, or otherwise, in contravention of Rule 14a-9 of the Exchange Act, solicited or permitted the use of his name to solicit proxies, consents, or authorizations in respect of non-exempt securities registered with the SEC pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], by means of a proxy statement, form of proxy statement, notice of meeting and other communications that contained statements, which, at the time and in the light of the circumstances under which they were made, were false or misleading with respect to material facts or which omitted to state material facts necessary in order to make the statements made therein not false or misleading or necessary to correct statements in earlier communications with respect to the solicitation of a proxy for the same meeting or subject matter which became false or misleading.

66. By engaging in the foregoing conduct, Craigie violated, and unless enjoined will likely again violate, Exchange Act Section 14(a) [15 U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.17a-9].

## **RELIEF REQUESTED**

WHEREFORE, the SEC respectfully requests that this Court enter a Final Judgment:

### I.

Finding that Craigie committed the violations alleged herein.

### II.

Permanently restraining and enjoining Craigie from violating Exchange Act Section 14(a) [15 U.S.C. § 78n(a)] and Exchange Act Rule 14a-9 thereunder [17 C.F.R. § 240.17a-9].

**III.**

Ordering Craigie to pay civil penalties pursuant to Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)].

**IV.**

Enter an order, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)] and this Court's inherent equitable powers, barring Craigie from serving as an officer or director of any issuer having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)], as appropriate or necessary for the benefit of investors.

**V.**

Granting such other and further relief that this Court deems just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: September 30, 2024<br>Washington, DC | SECURITIES AND EXCHANGE COMMISSION<br><br>By:<br>　/s/ Derek S. Bentsen<br>Derek Bentsen<br>David Nasse<br>Elliot J. Weingarten<br>James Valentino<br>U.S. SECURITIES AND EXCHANGE COMMISSION<br>100 F Street, NE<br>Washington, D.C. 20549<br>Tel: 202-551-6426<br>Email: bentsenD@sec.gov<br><br>*Attorneys for Plaintiff* |